United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL C. ANIGBOGU,

             Plaintiff,

    v.

ALEJANDRO N. MAYORKAS,

             Defendant.

Case No.  21-cv-07419-TSH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 53

## I.    INTRODUCTION

Pending before the Court is Defendant Alejandro Mayorkas's Motion for Summary Judgment.  ECF No. 53.  Plaintiff Michael Anigbogu filed an Opposition (ECF No. 59), and Defendant filed a Reply (ECF No. 63).  For the reasons stated below, the Court **DENIES** the motion.[1]

## II.    BACKGROUND

### A.    Factual Background[2]

In 2002, Director Emilia Bardini hired Plaintiff Michael Anigbogu as an Asylum Officer in the San Francisco Asylum Office.  ECF No. 60, Plaintiff's Response to Defendant's Separate Statement of Facts ("DSS"), No. 1.  Anigbogu is a black, African-American man from Nigeria.  ECF No. 63-1, Defendant's Reply to Plaintiff's Additional Statement of Facts ("PSS"), No. 1.

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 23.

[2]  Plaintiff contests much of Defendant's stated facts on the basis that the supportive exhibits are not properly authenticated.  *See, e.g.*, DSS No. 2.  Plaintiff does not otherwise dispute the truth of the facts themselves, and for purposes of this factual background, the Court treats these facts as undisputed.  The Court addresses this authenticity objection herein.  All facts provided in the factual background are undisputed unless stated otherwise.

United States District Court
Northern District of California

1    In November 2016, the San Francisco Asylum Office posted vacancies for a GS-13 Senior

2    Asylum Officer position.  DSS No. 28.  Anigbogu applied for the position, along with twenty-two

3    other individuals.  DSS No. 31.  Director Bardini was the only official with input into identifying

4    applicants for interviews.  DSS No. 34.  Bardini selected eight individuals to interview, and three

5    individuals were chosen for positions.  DSS Nos. 35, 36.  Bardini did not select Anigbogu to

6    interview, nor for the position.  *See* DSS No. 41.  Of those selected to interview, seven of the eight

7    interviewees were white.  PSS No. 11.  All three individuals selected for the position were white.

8    PSS No. 16.  Of the three candidates selected, two were from the United States and one was born

9    in Europe.  PSS Nos. 17-19.  All three individuals had been hired as Asylum Officers in 2013,

10   approximately eleven years after Anigbogu.  PSS No. 20; ECF 59-2, Declaration of Anthony

11   Risucci ("Risucci Decl.") Ex. 7 at 6.

12   On February 24, 2017, Anigbogu contacted an EEO Counselor regarding his non-selection

13   for the Senior Asylum Officer position.  DSS No. 71.  Anigbogu filed a formal complaint on

14   March 31, 2017.  DSS No. 72.  At the latest, Bardini become aware of Anigbogu's EEO complaint

15   on March 31, 2017.  PSS No. 49.

16   Pauline Sherry, Anigbogu's supervisor from October 2016 through July 2017, was

17   assigned to write Anigbogu's FY2017 performance evaluation.  DSS Nos. 50, 58.  In FY2015 and

18   FY2016, Anigbogu received overall ratings of "Exceeded Expectations," the second rating of four.

19   DSS Nos. 16, 19.

20   Sherry emailed Deputy Director Danielle Lehman on October 18, 2017, stating that Sherry

21   believed they should extend Anigbogu's rating period, as he was out of the office during part of

22   the rating period and was not given an opportunity to show that his work had improved since his

23   2017 mid-year performance review.  DSS No. 60; Declaration of Adrienne Zack ("Zack Decl.")

24   Ex. 46.  Lehman, Section Chief Kristen Hatanaka, and Bardini consulted with Labor and

25   Employee Relations ("LER") regarding extending Anigbogu's rating period.  DSS No. 61.  LER

26   advised that they could either place Anigbogu on a performance improvement plan ("PIP") or rate

27   him as "Achieved Expectations," the third lowest rating of four, across all categories and state in

28   the contents of the performance evaluation that he was not meeting expectations and must

2

1    improve.  *See* DSS No. 62; Zack Decl. Exs. 47, 48, 49.  Hatanaka, Lehman, and Bardini

2    determined to rate Anigbogu as "Achieved Expectations" for FY2017.  DSS No. 63.

3          On December 14, 2017, Anigbogu contacted an EEO counselor regarding his FY2017

4    performance review rating.  DSS No. 73.

5    **B.    Procedural Background**

6          On September 23, 2021, *pro se* Plaintiff filed the instant action against Defendant.  ECF

7    No. 1.  Plaintiff alleged discrimination based on age, race, color, and national origin, as well as

8    retaliation.  *Id.* at 4.  On May 3, 2022, Plaintiff filed a First Amended Complaint ("FAC")

9    alleging: 1) national origin-based discrimination in violation of Title VII; 2) race-based

10   discrimination in violation of Title VII; 3) color-based discrimination in violation of Title VII; and

11   4) retaliation in violation of Title VII.  ECF No. 30.  On May 17, 2022, Defendant filed an Answer

12   to the FAC.  ECF No. 33.  On September 8, 2022, Plaintiff was appointed counsel.  ECF No. 41.

13         On June 15, 2023, Defendant filed a Motion for Summary Judgment.  ECF No. 47.  On

14   June 16, 2023, the Court denied Defendant's motion without prejudice and ordered the parties to

15   meet and confer to determine whether they would file a joint or separate statement of facts.  ECF

16   No. 52.  Defendant filed another Motion for Summary Judgment on June 16, 2023.  ECF No. 53.

17   Plaintiff filed an Opposition on June 30, 2023.  ECF No. 59.  On July 10, 2023, Defendant filed a

18   Reply.  ECF No. 63.  The Court held a hearing on August 17, 2023.

19                          **III.    LEGAL STANDARD**

20         Summary judgment is proper where there is "no genuine dispute as to any material fact and

21   the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving

22   for summary judgment bears the initial burden of identifying those portions of the pleadings,

23   discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*

24   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome

25   of the case, and a dispute as to a material fact is genuine if there is sufficient evidence for a

26   reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477

27   U.S. 242, 248 (1986).

28         If the moving party meets its initial burden, the opposing party must then set forth specific

*United States District Court*
*Northern District of California*

3

facts showing that there is some genuine issue for trial.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the task of the Court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden "to identify with reasonable particularity the evidence that precludes summary judgment."  *Id.*  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citations omitted).

"While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence."  *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")).  Still, to survive summary judgment, the nonmoving party "must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (citations omitted).  If the nonmoving party fails to identify such evidence, or if it offers evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson,* 477 U.S. at 249–50 (citations omitted).

## IV.   DISCUSSION

### A.    Evidentiary Objections

#### 1.    Plaintiff's Objections

##### a.    Authenticity

Plaintiff argues that much of the evidence submitted by Defendant in his Motion for Summary Judgment is inadmissible because Defendant does not properly authenticate the

1    documents where the documents were submitted based on an affidavit by Defendant's counsel and

2    counsel lacked the necessary personal knowledge.  ECF No. 59 at 6-8.  Plaintiff specifically

3    contests Defendant's Exhibits 3-23, 25-30, 33-39, 40-51, and 55-59.[3]  *Id.* at 8 n.4.[4]

4         "At the summary judgment stage, we do not focus on the admissibility of the evidence's

5    form.  We instead focus on the admissibility of its contents."  *Sandoval v. Cnty. of San Diego*, 985

6    F.3d 657, 666 (9th Cir.), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021)

7    (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)); *see* Fed. R. Civ. P. 56(c)(2).

8    "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact

9    cannot be presented in a form that would be admissible in evidence. . . .  The burden is on the

10   proponent to show that the material is admissible as presented or to explain the admissible form

11   that is anticipated."  Fed. R. Civ. P. 56 (advisory comm. note to 2010 Amendments).

12        Anigbogu cites to *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) for the

13   proposition that a motion for summary judgment must be supported by admissible evidence.

14   However, Anigbogu does not actually contest that any of the documents or their contents would be

15   inadmissible at trial, but rather argues that Defendant did not properly authenticate them in his

16   Motion for Summary Judgment.  "[D]istrict courts in this circuit have routinely overruled

17   authentication and hearsay challenges at the summary stage where the evidence could be presented

18   in an admissible form at trial, following *Fraser*."  *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227,

19   1232 (N.D. Cal. 2018) (citing *Fraser*, 342 F.3d 1032).  In his Reply, Defendant has provided bases

20

21   [3]  Anigbogu specifies in a footnote in his Opposition that he objects to Exhibits 3-23, 25-30, 33-
22   39, 40-51, and 55-59 on the basis of improper authentication and lack of personal knowledge.
     ECF No. 59 at 8 n.4.  However, in Anigbogu's footnote 3 he states that Defendant's counsel
     would have personal knowledge of Exhibit 38 because it is a deposition.  *Id.* at 7 n.3.  The Court
23   also notes, as discussed below, that Plaintiff objects on the basis of relevance to Defendant's
     Exhibit 24, but the details of the objection make clear that Plaintiff intended to object to Exhibit
24   23.  *Id.* at 8 n.4.  While the Court discerns that Plaintiff intended his relevance objection for
     Exhibit 23 rather than Exhibit 24, Plaintiff does not detail his authenticity objections for the Court
25   to say whether Plaintiff intended his objections for different exhibits than those stated.  Thus, the
     Court takes Plaintiff at his word that he intends to object on the basis of authenticity to Exhibits 3-
26   23, 25-30, 33-39, 40-51, and 55-59.
     [4]  At the summary judgment hearing Plaintiff stated that his authentication objection was mooted
27   by Defendant's showing in his reply brief.  The Court nonetheless addresses this objection on the
     merits given the prominence it had in Plaintiff's opposition brief and Defendant's reply.  Further,
28   as explained below, for one of the exhibits, the Court does not agree that Defendant mooted this
     objection on reply.

United States District Court
Northern District of California

for authenticating the contested documents.  Defendant explains that Exhibits 36 and 37 were produced by Plaintiff during discovery.  *See* Zack Decl. Exs. 36, 37; Reply Zack Decl. ¶¶ 5, 6, Exs. 63, 64; *see also Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent).  Defendant's Exhibit 16 is duplicative of Plaintiff's Exhibit 17, which Plaintiff's counsel testified is authentic.  *Compare* Zack Decl. Ex. 16, *with* Risucci Decl. Ex. 17; Risucci Decl. ¶ 13; *see Orr*, 285 F.3d at 776 ("We now hold that when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties, subject to the right of any party to present evidence to the ultimate fact-finder disputing its authenticity.").  Plaintiff objects to the authentication of deposition excerpts, but states in his Opposition that Plaintiff's counsel would have personal knowledge of the depositions to authenticate them.  *See* ECF No. 59 at 7 n.3; Zack Decl. Exs. 19, 21, 38.  Defendant produces testimony from Anigbogu indicating that he can authenticate Exhibits 3 through 15, 20, 39, 40, 41, 43 and 55.  *See* ECF No. 68, Reply Declaration of Adrienne Zack ("Reply Zack Decl.") Ex. 60.  Defendant also points to witnesses who can authenticate most of the remaining contested exhibits and includes declaration from some of these witnesses attesting as such.  *See* ECF Nos. 63 at 4; 64-67; *see Lawrence v. City & Cnty. of San Francisco*, 258 F. Supp. 3d 977, 986 (N.D. Cal. 2017) (overruling objections to police reports as improperly authenticated because authors of the reports could testify at trial to their contents based on personal knowledge); *Cottrell v. I.C. Sys., Inc.*, No. 2:21 CV 1167, 2022 WL 17582374, at *1 (W.D. Wash. Dec. 12, 2022) (overruling objections to exhibits based on authentication and hearsay, in part, where defense counsel indicated defendants could call an appropriate witness for the exhibits at trial).

The only contested document which the Court finds Defendant has not shown would be admissible at trial is Defendant's Exhibit 35.  Defendant's counsel's declaration identifies the document as a "chart of EEO complaints made against [San Francisco Asylum Office] officials from 2012 through 2022."  Zack Decl. ¶ 36.  Defendant states that Danielle Lehman, the current Director of the San Francisco Asylum Office and former Deputy Director, could authenticate the document.  ECF No. 63 at 4.  Upon examination, the document makes no reference to Lehman nor

United States District Court
Northern District of California

6

makes clear how its contents would be within her personal knowledge.  Zack Decl. Ex. 35.

Further, Lehman submitted a declaration with Defendant's Reply, attesting to the authenticity of

certain documents, but not Exhibit 35.  *See* ECF No. 65.  Nor does the Court find the document

sufficiently authenticating under Federal Rule of Evidence ("FRE") 901(b)(4).  *See* Fed. R. Evid.

901(b)(4) (a document's "appearance, contents, substance, internal patterns, or other distinctive

characteristics of the item, taken together with all the circumstances" is evidence sufficient to

satisfy the authentication requirement); *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp.

3d 891, 926 (N.D. Cal. 2016) ("Under Rule 901(b)(4), "documents . . . could be authenticated by

review of their contents if they appear to be sufficiently genuine.") (quoting *Las Vegas Sands,

LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011)).

Accordingly, the Court **OVERRULES** Anigbogu's objections to Exhibits 3-23, 25-30, 33-

34, 36-38, 40-51, and 55-59.  The Court **SUSTAINS** Anigbogu's objection to Exhibit 35.

**b.    Relevance**

Plaintiff also objects to Exhibit 24 based on relevance, arguing Director Bardini did not

have access to the ratings of Senior Asylum Officer applicants at the time of her decision.  ECF

No. 59 at 8 n.4.  Based on Plaintiff's argument, the Court believes Plaintiff is not objecting to

Defendant's Exhibit 24, which is an interview with Bardini, but rather is objecting to Defendant's

Exhibit 23, which is an Individual Certificate Audit Report for the Senior Asylum Officer

position.  Zack Decl. ¶¶ 24-25, Exs. 23, 24.  "[O]bjections for relevance are generally unnecessary

on summary judgment because they are 'duplicative of the summary judgment standard itself.'"

*Sandoval*, 985 F.3d at 665 (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119

(E.D. Cal. 2006)).  "[I]f evidence submitted on summary judgment could create a genuine dispute

of material fact, it is, by definition, 'of consequence in determining the action,' and therefore

relevant . . . .  Conversely, if the submitted evidence does not create a genuine dispute of material

fact, there is no need for the court to separately determine whether it is relevant because, even

assuming it is not, it will not affect the ultimate summary judgment ruling."  *Id.* (citing *Burch*, 433

F. Supp. 2d at 1119).  The Court **OVERRULES** Plaintiff's objection to the document as a whole,

as it is duplicative of the summary judgment standard, but notes the limited relevance of the

United States District Court
Northern District of California

applicant ratings listed in the document, as the parties agree that Bardini did not have access to these ratings during the Senior Asylum Officer application process.  DSS No. 33.

### 2.      Defendant's Objection

Defendant objects on the basis of hearsay to use of Anigbogu's testimony stating other employees were discriminated against because of their nationalities and races.  *See* ECF No. 63 at 5; Anigbogu Dep. 29:9-32:20, 174:20-177:21.  As stated above, the pertinent question is whether Anigbogu's testimony – that others informed him that they were discriminated against by Bardini and filed complaints – could be presented in admissible form at trial.  *See Fraser*, 342 F.3d at 1036.  The Court finds that Plaintiff's testimony that he witnessed another employee being thrown out of her office is not hearsay as it is based on his personal observations.  Deposition of Michael Anigbogu ("Anigbogu Dep.") 177:8-11.  The Court finds that Plaintiff's testimony that he witnessed Bardini be "very vicious with these type of people," seemingly meaning "racial minorities," is similarly not hearsay although its vagueness prevents the Court from drawing much from the statement.  *Id*. at 174:11-19.

As to Anigbogu's other testimony that other employees told him they were discriminated against, the analysis is more complicated.  If presented in the same format through Anigbogu's own testimony, this evidence would appear to constitute inadmissible hearsay.  *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 775-76 (5th Cir. 2009) (finding testimony regarding allegations of harassment of four non-parties who did not testify at trial was improperly admitted but was harmless error).  However, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."  *Sandoval*, 985 F.3d at 666 (quoting *Fraser*, 342 F.3d at 1036).  "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56 (advisory comm. note to 2010 Amendments).

Plaintiff argued at the August 17, 2023 hearing before the Court that the evidence would be admissible either as reputation testimony or through the testimony of the employees themselves.  *See* ECF No. 77, August 17, 2023 hearing transcript, 12:3-13.  As to the first argument, the Court agrees with Defendant that the reputation testimony would be impermissible

character evidence.  FRE 404(a) prohibits use of evidence of a person's character to prove that on a particular occasion that person acted in accordance with that character trait.  While testimony related to specific wrongful acts is permitted to show motive or intent, and indeed is commonly allowed in employment discrimination cases for such purposes, the plain language of FRE 404(b) makes no similar allowance for reputation evidence.  *See Schweitzer-Reschke v. Avnet, Inc*., 881 F. Supp. 530, 533 (D. Kan. 1995) (declining to read into the plain language of FRE 404(b) the ability to use character evidence in the form of reputation testimony to prove intent or motive to discriminate); *L'Etoile v. New England Finish Sys., Inc.*, 575 F. Supp. 2d 331, 338 (D.N.H. 2008) ("[W]hile Rule 404(b) allows evidence of particular acts to show discriminatory intent in a sex discrimination case, . . . Rule 404(a) does not permit the use of reputation evidence for that purpose.").

As to the possibility of the employees testifying, Defendant argues that they were not disclosed by Plaintiff during discovery.  ECF No. 63 at 5; Reply Zack Decl., Ex. 67.  Federal Rule of Civil Procedure ("Rule") 26(a) requires parties to disclose the names and contact information of individuals "likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a).  Rule 26(e) imposes an affirmative obligation on a party to supplement its initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Plaintiff is not required to supplement his disclosures if the additional information has "otherwise been made known to the other parties during the discovery process."  Fed. R. Civ. P. 26(e).  A mere passing reference to a potential witness, however, is insufficient.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) ("That another witness has made a passing reference in a deposition to a person with knowledge or responsibilities who could

conceivably be a witness does not satisfy a party's disclosure obligations.").  Here, Plaintiff clearly identifies in his deposition testimony, as well as in his response to Defendant's first set of interrogatories, the individuals Fidelis Jimenez, Lorraine Marjaka, and Sodaba.  Anigbogu Dep. 30:16-32:13; 174:3-177:2; Risucci Decl. Ex. 6, Anigbogu's Response to First Set of Interrogatories, Response to Interrogatory No. 1 at 5.  Further, he states in both instances that these individuals were discriminated against by Bardini, and specifically in his deposition testimony that they were discriminated against based on race and national origin.  Anigbogu Dep. 31:3-7 (Jimenez alleging discrimination based on race and nationality); Anigbogu Dep. 31:11-22 (Marjaka alleging discrimination based on nationality and ethnicity); Anigbogu Dep. 31:24-32:6 (Sodaba alleging discrimination based on nationality and race).

By specifically identifying these three individuals and their relevance as individuals who Bardini allegedly discriminated against in the office based on their race and national origin, Plaintiff sufficiently put Defendant on notice of "individual[s] likely to have discoverable information –along with the subjects of that information – that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2018 WL 3646842, at *12 (N.D. Cal. Aug. 1, 2018) (finding employee sufficiently disclosed in discovery where deposed vice president identified employee's role within the company and indicated "clearly and repeatedly" her relevant conduct); *Patton v. Hanassab*, No. 14-CV-1489-AJB-WVG, 2016 WL 6962747, at *6 (S.D. Cal. Nov. 29, 2016) (finding potential witness disclosed where plaintiff identified witness in deposition testimony and interrogatories and provided information to put defendant on notice as to the scope of the witness's potential testimony at trial).  Defendant's counsel even cross-examined Anigbogu in his deposition about these particular witnesses and their claims.  Anigbogu Dep. 174:1-177:21. Thus, while Anigbogu's testimony as to these witnesses itself may constitute inadmissible hearsay, the Court finds that the substance of the testimony – that these individuals were discriminated against by Bardini based on national origin and race – could be submitted in admissible form through the testimony of these witnesses.

Accordingly, the Court **OVERRULES** Defendant's objection to exclude evidence of

discrimination by Bardini against other employees on the basis of race and national origin as hearsay.

**B.   Discrimination Claims**

Plaintiff brings causes of action under Title VII alleging discrimination on the basis of race, color, and national origin.  ECF No. 30 at 13-16.  Defendant seeks summary judgment on these claims related to the failure to promote Anigbogu in 2017 and for the performance review he received FY2017.  ECF No. 53 at 15-17.  Anigbogu states in his Opposition that his discrimination claims are not related to his FY2017 performance review.  ECF No. 59 at 8 n.5.  The Court agrees with Anigbogu that his FAC does not allege that his FY2017 performance review was discriminatory.  *See* ECF No. 30 at 13-16.  The Court thus does not further consider Defendant's arguments that the FY2017 performance review was nondiscriminatory.

The Court also notes that both parties address Anigbogu's discrimination claims based on race, color, and national origin as a collective, rather than individually.  Because the evidence and factual allegations for the claims are largely identical, the Court addresses them collectively as well.

**1.     *McDonnell* Framework**

Title VII of the Civil Rights Act of 1964, provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e–2(a)(1).  The Supreme Court has held that "this not only covers 'terms' and 'conditions' in the narrow sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment . . . in employment.'"  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998).

The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), established a three-stage burden-shifting test for evaluating claims of discrimination, including race discrimination.  Under this test, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *Id.* at 802.  "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise

to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) (citation omitted); *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000).

Once the *prima facie* case is established, the employer must then offer a legitimate, nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802. Although the burden of production shifts to the defendant at this point, the burden of proof remains with the plaintiff at all times. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

Finally, if the employer offers a legitimate, nondiscriminatory reason, the plaintiff must then prove that the employer's proffered reason was pretextual. *McDonnell Douglas*, 411 U.S. at 804. To defeat summary judgment with a showing of pretext, a plaintiff can "show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). In addition, a showing that a defendant treated similarly situated employees outside plaintiff's protected class more favorably would be probative of pretext. *Id.*

### 2. *Prima Facie*

"To make out a prima facie case under *McDonnell Douglas*, a plaintiff must show that (1) [he] belongs to a protected class; (2) [he] applied for and was qualified for the position [he] was denied; (3) [he] was rejected despite her qualifications; and (4) the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005). As to qualifications, Plaintiff must "present[] sufficient evidence from which the trier of fact could reasonably infer that [he] possessed the 'minimum qualifications' for the positions, . . . or that [his] qualifications were comparable with those of the persons awarded the positions." *Lyons v. England*, 307 F.3d 1092, 1113–14 (9th Cir. 2002) (quoting *Laborde v. Regents of the Univ. of California,* 686 F.2d 715, 717 (9th Cir. 1982)).

United States District Court
Northern District of California

United States District Court
Northern District of California

Anigbogu has presented sufficient evidence to meet his minimal burden here.  He is a black, African-American man from Nigeria.  PSS No. 1.  He applied for a promotion to be Senior Asylum Officer in late 2016 or early 2017.  DSS No. 31.  The three people hired for the position were white, and either American or European national origin.  PSS Nos. 16-19.  The parties primarily debate his qualifications, but the Court finds that he met the minimum qualifications for the position.  *See* DSS No. 29; Zack Decl. Ex. 20.  The position required experience on "complex cases," analyzing immigration adjudication processes, providing guidance on policy matters for immigration services, and reviewing decisions on asylum by field officers.  Zack Decl. Ex. 20. The parties dispute the definition of "complex cases" and whether Plaintiff was sufficiently able to address them.  *See* ECF Nos. 59 at 15-16; 63 at 7-8.  Plaintiff testified that he worked on national security cases, fraud cases, and boilerplate cases and there was at least some testimony identifying these kinds of cases as potentially complex.  *See* ECF No. 57-2, Anigbogu Dep. 163:16-164:9; ECF No. 59-2, Risucci Decl. Ex. 10, Deposition of Susan Wechtaluk ("Wechtaluk Dep.") 40:8-14; Ex. 5, Deposition of Emilia Bardini ("Bardini Dep.") 18:22-19:5; Ex. 9, Deposition of Suzanne Roseman ("Roseman Dep.") 59:9-17.  At minimum, this is evidence that he had experience with complex cases, regardless of his level of competency.  Further, Anigbogu had been employed at the San Francisco Asylum Office at least ten years longer than the other applicants for the role.[5] Risucci Decl. Ex. 7 at 4-5.  There is evidence that Plaintiff was performing adequately at his current position, as Plaintiff's performance evaluations in the two years preceding the promotion opportunity show that he was rated "Exceeded Expectations," the second-best rating out of four. DSS Nos. 16, 19.  In sum, this evidence is sufficient to meet the "minimal burden" on Anigbogu to establish a *prima facie* showing of discrimination based on race, color, and national origin.

Defendant argues that the applicants selected for the promotion are not materially similar to Anigbogu.  ECF No. 53 at 10-11.  The Court does not believe Anigbogu is required to show that he is materially similar to the applicants selected to meet his *prima facie* burden in a failure-

---

[5] It appears that another applicant had worked longer at the San Francisco Asylum Office, but the parties agree this individual opted to become a trainer rather than pursue the Senior Asylum Officer position.  PSS No. 6.

13

to-promote claim.  *See Lyons*, 307 F.3d at 1113–14 (finding plaintiff may show at *prima facie* stage that he is comparably qualified to those awarded the positions *or* that he is minimally qualified).  Whether similarly situated or not, Anigbogu has met the necessary elements for his *prima facie* burden.

### 3.  Legitimate, Nondiscriminatory Reasons

Once a plaintiff has established a *prima facie* case, "the burden shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for its action."  *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (quoting *McDonnell Douglas*, 411 U.S. at 802).  It is undisputed that Director Bardini was the only official with input on the application selection process.  DSS No. 34.  Bardini stated that she did not select Anigbogu to interview for the position because he had not exhibited the qualities required for the job based on discussions with the supervisors and his backlog of uncompleted cases.  Zack Decl. Ex. 24 at 11.  She stated that it was "extremely important" to the position to be able to interview complex cases and have been requested to interview such cases previously.  *Id.* at 10.  She also stated that no one had ever asked that Anigbou take a case, and that supervisors and Fraud Detection and National Security Directorate ("FDNS") officers did not have as much confidence in him as they did others.  *Id.* at 10-11.  Bardini stated that during 2015 and 2016 she learned from supervisors that they were having difficulty with Anigbogu's case assessments because they were not legally sufficient.  *Id.* at 5.  She stated that supervisors had indicated frustration over the years with him not following through on credibility issues and whether documents could be fraudulent.  Zack Decl. Ex. 32 at 6. The Court finds these reasons sufficient for Defendant to meet his burden under *McDonnell Douglas*.

### 4.  Pretext

If the employer articulates a legitimate, nondiscriminatory reason for its action, "the presumption of unlawful discrimination 'simply drops out of the picture.'"  *Dominguez-Curry*, 424 F.3d at 1037 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  "The plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for

discrimination." *Id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000)). "A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence." *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094–95 (9th Cir. 2005). Anigbogu does not argue that he has direct evidence, but rather relies on circumstantial evidence. *See* ECF No. 59 at 2. "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry*, 424 F.3d at 1037. Circumstantial evidence can be utilized affirmatively to make a case that an employer is biased, such as through statistical evidence. *Coghlan*, 413 F.3d at 1095. Or it can be used negatively, such as by showing that an employer's explanation is unworthy of credence. *Id.* "All of the evidence [concerning pretext] – whether direct or indirect – is to be considered cumulatively." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003).

Anigbogu primarily argues that Defendant's proffered explanations for not promoting him are "unworthy of credence." ECF No. 59 at 13-18. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000). "Disputing only one of several well-supported, independently sufficient reasons for termination is generally not enough to defeat summary judgment." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014); *see also Cotton v. City of Alameda,* 812 F.2d 1245, 1248 (9th Cir. 1987) ("We must consider whether a genuine issue exists with respect to the credibility of each of the employer's proffered explanations."); *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005), *as modified on denial of reh'g* (Dec. 20, 2005) ("[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual."). The Ninth Circuit in *Curley* noted some exceptions to this general proposition, as cited below. 772 F.3d 629.

The Court finds that Anigbogu does produce evidence contesting some of Bardini's proffered reasons. One of Bardini's reasons for selecting the three applicants, Vanessa Lawson,

United States District Court
Northern District of California

Christopher McNary, and Rose Mraz, is that they had much more immigration experience than Anigbogu based on their resumes.  Bardini Dep. 13:18-14:1.  Such an explanation is undermined based on the relevant applicants' resumes, as Anigbogu was working as an Asylum Officer prior to two of these applicants even graduating law school.  *Compare* Declaration of Michael Anigbogu ("Anigbogu Decl.") Ex. 3 (USCIS start date of 2002), *with* Risucci Decl. Ex. 13 (Mraz law school graduation date of 2004), Ex. 14 (McNary law school graduation date of 2011). Bardini clarifies that the three selected individuals had more experience as private practitioners rather than Asylum Officers.  Bardini Dep. 14:9-25.  Bardini argues that private experience can be more helpful to work as a Senior Asylum Officer than prior work as an Asylum Officer because a person with private experience has broader immigration law knowledge.  Bardini Dep. 45:7-46:25. The Court finds a jury could consider Bardini's reasoning here incredible.  First, she seems to suggest that Anigbogu's fifteen years' experience as an Asylum Officer actually made him less experienced than the applicants who were selected.  But a jury could find that work as an Asylum Officer is the more relevant experience for someone applying to be a Senior Asylum Officer, which would make Anigbogu much more experienced than the applicants who were selected. Second, it does not appear necessarily true that Anigbogu had less private practice experience. Anigbogu worked for five years in solo practice, which included environmental law and immigration law.  Anigbogu Decl. Ex. 3.  Vanessa Lawson, in contrast, worked in private immigration practice only part-time for two years.  Risucci Decl. Ex. 12.  There is a clear material dispute over the veracity of Bardini's explanation and whether it is worthy of credence.  *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1171 (9th Cir. 2007) ("Viewing the evidence in the light most favorable to Noyes, Heinz's credibility on the issue of why he chose Jilesen was severely undermined by conflicting evidence on the promotion process.").  Further, a jury could find Bardini's stated reason as to Anigbogu's immigration experience so incredible as to cast doubt on her credibility at large.  *See also Curley*, 772 F.3d at 633 n.3 ("A plaintiff's attack on an employer's legitimate, nondiscriminatory reasons may sometimes defeat summary judgment without discrediting all of the employer's stated reasons.  For example, this could be true when . . . the pretextual character of one explanation is 'so fishy and suspicious,' that a jury could 'find that

the employer (or its decisionmaker) lacks all credibility.'" (citations omitted)).

Further, there is a dispute regarding Bardini's explanation that FDNS did not have as much confidence in Anigbogu as they did others. Zack Decl. Ex. 24 at 11. Suzanne Roseman, one of three or four FDNS officers, testified that she disagreed with Bardini's statement that FDNS lacked confidence in Anigbogu, and stated that she did, in fact, have confidence in him. Roseman Dep. 65:5-18. Roseman, according to Plaintiff, was the FDNS officer who worked most closely with him in the years prior to the promotion opportunity. PSS No. 22; Anigbogu Decl. ¶ 7. Her testimony sufficiently calls into question the legitimacy of Bardini's stated rationale regarding the confidence of the FDNS officers. *See Shelley v. Geren*, 666 F.3d 599, 611 (9th Cir. 2012) (finding that decision-maker's testimony that she received a negative reference about plaintiff from a coworker, coupled with the coworker's testimony denying she ever gave that negative reference, provided evidence of pretext); *Chuang*, 225 F.3d at 1127 ("Davis contends that Dr. Seldin, the presumptive Rowe Chair, demanded the precise space occupied by the Chuangs on the fourth floor of Tupper Hall . . . . Dr. Seldin, however, denied this contention in his deposition. This is the sort of evidence that could lead a factfinder to disbelieve Davis."). This disputed reason, in combination with the doubt raised surrounding the sufficiency of Anigbogu's immigration experience, may defeat summary judgment despite not casting doubt on all of Bardini's cited reasons. *See Curley*, 772 F.3d at 633 n.3 (collecting cases where an employee defeated summary judgment without discrediting all of the employer's stated reasons, such as where an "employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them.").

Beyond questions surrounding at least some of Bardini's proffered reasons for not promoting Anigbogu, there is some evidence that Bardini discriminated against other employees based on race and national origin. Anigbogu Dep. 30:16-32:13; 174:3-177:2. "It is clear that an employer's conduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee who is a member of that group." *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995). "'Me too' evidence may be used to 'show motive or intent, or for other non-propensity purposes.'" *Pham v. Bast*, No. 17-CV-04194-WHO, 2023 WL 4053415, at *1 (N.D.

Cal. June 15, 2023) (quoting *Zucchella v. Olympusat, Inc.*, No. CV-19-7335, 2023 WL 2633947, at *16 (C.D. Cal. Jan. 10, 2023) (citing cases)).  While Anigbogu will be required to produce the evidence of Bardini's discriminatory conduct against other employees in an admissible form, at the summary judgment stage the Court finds this "me too" evidence, coupled with disputed evidence over the legitimacy of at least some of Bardini's stated reasons for not promoting Anigbogu, to be sufficient to raise a question of fact as to pretext.

### a.      Same Actor Inference

Defendant argues that he is entitled to a strong inference that Bardini's reasons for not promoting Plaintiff are not pretextual because Bardini hired Plaintiff, as well as made the decision not to promote Plaintiff.  ECF No. 53 at 14-15.  Plaintiff does not address Defendant's argument in his Opposition.

"[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-71 (9th Cir. 1996).  "[A]n employer's initial willingness to hire the employee-plaintiff is strong evidence that the employer is not biased against the protected class to which the employee belongs." *Coghlan*, 413 F.3d at 1096.  Courts in the Ninth Circuit have not limited this principle to hiring and firing, but applied it more broadly.  *See id.* (applying inference where "plaintiff was not actually fired but merely offered a less desirable job assignment."); *Schechner v. KPIX-TV*, 686 F.3d 1018, 1026 (9th Cir. 2012) ("The inference applies to favorable employment actions other than hiring, such as promotion.").  An employer must establish entitlement to the same-actor inference.  *Qualls v. Regents of the Univ. of California*, No. 113CV00649LJOSMS, 2015 WL 6951757, at *4 (E.D. Cal. Nov. 10, 2015).

It is undisputed that Bardini hired Plaintiff in 2002.  *See* DSS No. 1.  It is undisputed that Bardini was the only official with input into the interview selection process, and that Plaintiff was not selected for an interview.  DSS No. 34.  The relevant promotion decision was made some time in late 2016 or early 2017.  DSS No. 28.  The Court does not consider this 14-year gap to be a "short period of time" supporting a strong inference that there was no discriminatory action.  *See*

18

*Villareal v. Chubb & Son, Inc.*, No. SACV 11-0674 DOC, 2012 WL 3151254, at *7 (C.D. Cal. July 31, 2012) (declining to apply same-actor inference where there was a five-year gap between plaintiff's promotion and firing); *compare Coghlan*, 413 F.3d at 1097 (applying the same-actor inference when three years lapsed between hiring and the adverse employment action); *Schechner*, 686 F.3d at 1026 (applying inference where plaintiff was offered an employment contract less than two years prior to being laid off).  Further, Defendant's argument that Bardini assigned Anigbogu to a refugee detail in 2016 and that this favorable assignment prompts application of the same-actor inference fails because Defendant's cited evidence does not establish that it was Bardini who selected Plaintiff for the detail.  DSS Nos. 26, 27.  Anigbogu's testimony indicates that the Director is not necessarily responsible for selecting someone to go on a refugee detail, and Defendant does not point to evidence that in this case Bardini selected Anigbogu.  Def.'s Ex. 2, 75:13-18 (indicating that someone can be selected for a refugee detail because the Director selects him, they ask for volunteers, or the Refugee Program says that want specific officers).  The Court thus declines to apply a strong inference that there was no discrimination in this case.

Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment for Plaintiff's discrimination claims based on race, color, and national origin.

## C.     Retaliation Claim

### 1.     *Prima Facie* Case

"Section 704 of Title VII prohibits retaliation against an employee for opposing unlawful discrimination." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004).  "To establish a prima facie case of retaliation under Title VII, [Anigbogu] must show 1) that he acted to protect his Title VII rights; 2) that an adverse employment action was thereafter taken against his; and 3) that a causal link existed between the two events." *Id.*  If Anigbogu can establish a prima facie case, then the *McDonnell Douglas* burden-shifting framework applies.  *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1064 (9th Cir. 2002).

#### a.     Adverse Action

The crux of Anigbogu's retaliation claim is that, after he filed an EEO complaint based on denial of his promotion, his employer retaliated against him by giving him a FY2017 performance

review of "Achieved Expectations," the second-worst possible rating of four.  Defendant argued preemptively in his Motion for Summary Judgment that the FY2017 performance evaluation was not an adverse action in the context of Anigbogu's discrimination claim.  ECF No. 53 at 15-16. Defendant does not make clear whether he is arguing the same for Anigbogu's retaliation claim. Regardless, the Court agrees with Anigbogu that the 2017 performance review rating him "Achieved Expectations" may constitute an adverse action.  *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1286 n.7 (9th Cir. 2001) ("Even non-sub-average ratings can constitute an 'adverse employment decision' if they are clearly undeserved or a large departure from past reviews.").

### b.      Causal Connection

Defendant argues Anigbogu failed to establish a causal connection between the EEO complaint and the FY2017 review.  In *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), the Supreme Court held that the causation element of a retaliation claim requires a plaintiff to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  "[M]ere temporal proximity between an employer's knowledge of the protected activity and an adverse employment action . . . [is] sufficient evidence of causality to establish a prima facie case" if the temporal proximity is "very close."  *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Bardini received notice of Anigbogu's informal EEO complaint at the latest on or around March 31, 2017, and Anigbogu's FY2017 performance review is dated October 31, 2017 – a 7-month gap.  *See* PSS No. 49; Zack Decl. Ex. 53 at 7.  Such a gap may support an inference of causal connection, although it is insufficient on its own for Anigbogu to meet his burden.  *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Anderson v. City & Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1028 (N.D. Cal. 2016) ("Other courts within this Circuit have found that the temporal proximity of seven months, standing alone, is insufficient to support an inference of retaliatory motive." (collecting cases)).  In further support of causation, Anigbogu identifies that in June 2017, only a couple months after Bardini became

aware of his complaint, she required that Anigbogu work with a training officer.  DSS No. 55.

The record is unclear what role Bardini actually played in this decision and when it was made, but

"'circumstantial evidence of a "pattern of antagonism" following the protected conduct can give

rise to the inference'" of causation.  *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th

Cir. 2005) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997)).

Drawing all inferences, the Court interprets Bardini's statement that "we" tried to re-train

Anigbogu regarding security checks in the spring as evidence of Bardini's involvement in the

decision.  Zack Decl. Ex. 32 at 7.  While a close call, the Court will consider the seven-month time

frame in addition to the decision that Anigbogu work with a training officer despite his long career

as an Asylum Officer sufficient evidence to make out a causal connection between Anigbogu's

protected activity and the adverse action.

### 2.    Legitimate, Nonretaliatory Reason

The burden next shifts to Defendant to show a nonretaliatory reason for rating Anigbogu as

Achieved Expectations.  *See Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir.

2018).  Defendant produces evidence that Pauline Sherry, who was assigned to write Plaintiff's

performance review, emailed Deputy Director Danielle Lehman stating that Sherry believed they

should extend Anigbogu's rating period, as he was out of the office during part of the rating period

and was not given an opportunity to show that his work had improved since his 2017 mid-year

performance review.  DSS No. 60; Zack Decl. Ex. 46.  Lehman, Section Chief Hatanaka, and

Bardini consulted with LER, and LER advised that they could either place Anigbogu on a PIP or

rate him as Achieved Expectations, the third-lowest rating of four, across all categories and state

in the contents of the performance evaluation that he was not meeting expectations and must

improve.  *See* DSS No. 62; Zack Decl. Exs. 48, 49.  Hatanaka, Lehman, and Bardini determined to

rate Anigbogu as Achieved Expectations for FY 2017.  DSS No. 63.  Lehman then informed

Sherry to prepare Plaintiff's review accordingly.  DSS No. 64.  The Court finds such reasoning

sufficient for Defendant to meet his burden.

### 3.    Pretext

Anigbogu now must produce sufficient evidence to raise a question of material fact

United States District Court
Northern District of California

United States District Court
Northern District of California

whether Defendant's reasons are pretextual, and the Court finds that he has done so.  Anigbogu may show pretext either "directly by persuading the court that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Campbell*, 892 F.3d at 1022 (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)).  Here, because the Court finds that there is a dispute about Bardini's reasons for not promoting Plaintiff, the Court also finds that there is a triable issue of fact as to whether the reasons for giving Plaintiff the negative performance review are worthy of credence.  In the event that a jury finds that the reasons for not promoting Anigbogu are pretextual, a jury could also reasonably determine that the reasons for his performance review are also pretextual.  "This is but common sense: if a person is shown to be a liar in an outrageous manner or is shown to have lied about a number of issues, the inference that the person is non-credible, and should not be believed as to other issues, is a reasonable one." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1050 (11th Cir. 2000)).

Defendant argues that the decision to rate Anigbogu's performance as Achieved Expectations was not Bardini's alone.  ECF No. 53 at 20.  However, Defendant does not contest that Bardini was involved in the discussions to do so.  *See* DSS Nos. 61, 63.  Further, of those involved in the decision, she was the person with the most senior role at the time.  *Id.*  The Court does not consider the fact that others were involved in the decision-making sufficient to grant summary judgment where it is undisputed Bardini was aware of Plaintiff's EEO complaint at the time of the FY2017 performance review and was involved in the decision to rate his performance as Achieved Expectations.[6]

Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim.

---

[6] Plaintiff also argues that it is implausible that Bardini did not tell management employees about Anigbogu's EEO complaint.  ECF No. 59 at 22 n.16.  Anigbogu does not support this argument with evidence suggesting management's knowledge, and Sherry and Hatanaka both stated they were not aware of Plaintiff's complaint at the time of the review.  *See* Sherry Dep. 71:10-73:14; 146:7-18; ECF No. 56, Declaration of Kristen Hatanaka ¶ 5.

## V.    CONCLUSION

Based on the analysis above, the Court hereby **DENIES** Defendant's Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**

Dated:  November 22, 2023

THOMAS S. HIXSON
United States Magistrate Judge